**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Jose Mariano Miguel, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 25 C 11137 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| Kristi Noem *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION AND ORDER

U.S. Immigration and Customs Enforcement ("ICE") is currently detaining Petitioner Jose Mariano Miguel pending removal proceedings. ICE has denied Miguel access to a bond hearing, and Miguel petitions this Court to issue a writ of habeas corpus ordering Respondents to schedule a bond hearing. For the reasons stated below, the petition [1] is granted.

### Background

Miguel is a noncitizen with no criminal record who has lived in the United States for over twenty-five years. R. 1 ¶¶ 2–3. He is married with four children who are all U.S. citizens, and he is the primary financial support for his family. *Id.* ¶ 20. On September 14, 2025, he was taken into custody by ICE. *Id.* ¶ 5. He is currently detained by ICE pending removal proceedings and without the right to request a bond hearing. *Id.* ¶ 26. Respondents contends that Miguel is properly detained under 8 U.S.C. § 1225(b)(2)(A), which provides for mandatory detention. R. 16 at 23. Miguel contends that he is detained instead under 8 U.S.C. § 1226(a), under which he is entitled to a bond hearing. R. 17 at 3. Miguel petitions this Court under 28 U.S.C. § 2241(c) to issue a writ of habeas corpus ordering Respondents to schedule a bond hearing. R. 1 ¶ 65.

This case arises among a flurry of similar cases brought around the country. The Supreme Court has established that § 1225(b) applies to noncitizens "seeking admission into the country" while § 1226(a) applies to noncitizens "already in the country." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). And "[h]istorically, noncitizens who resided in the United States, but who had previously entered without inspection, were not deemed 'arriving aliens' under § 1225(b), but were instead subject to § 1226(a)." *Maldonado v. Olson*, 2025 WL 2374411, at *11 (D. Minn. Aug. 15, 2025). But under new policies announced in 2025, ICE began detaining noncitizens under § 1225(b) who would previously have been detained under § 1226(a). *Id.*; *see also Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *4 (N.D. Cal. Sept. 12, 2025) ("In 2025, however, the Government's policy changed dramatically."). This change opened the floodgates of litigation where noncitizens detained without a bond hearing, like Miguel, have petitioned federal district courts to issue writs of habeas corpus finding that they have been improperly detained under § 1225(b)(2)(A) and are entitled to bond hearings under § 1226(a). Dozens of federal district courts have addressed this issue over the past few months. This Court joins numerous other district courts which have found that noncitizens already in the country are properly detained pursuant to § 1226(a) rather than § 1225(b)(2)(A), and that these noncitizens are thus entitled to bond hearings.[1]

---

[1] *See, e.g., Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025); *Ochoa Ochoa v. Noem*, 2025 WL 2938779, at *1 (N.D. Ill. Oct. 16, 2025); *Lepe v. Andrews*, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Chogllo Chafla v. Scott*, 2025 WL 2688541 (D. Me. Sept. 22, 2025); *Salcedo Aceros*, 2025 WL 2637503; *Sampiao v. Hyde*, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *Mosqueda v. Noem*, 2025 WL 2591530, at *2 (C.D. Cal. Sept. 8, 2025); *Garcia v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Lopez-Campos v. Raycraft*, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *T. v. Bondi*, 2025 WL 2629839 (D. Minn. Aug. 29, 2025); *Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Leal-Hernandez v. Noem*, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Maldonado*, 2025 WL 2374411; *Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Martinez v. Hyde*, 2025 WL 2084238 (D. Mass. July 24, 2025); *Gomes v. Hyde*, 2025 WL 1869299 (D. Mass. July 7, 2025).

## Discussion

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241. "The individual in custody bears the burden of proving that his detention is unlawful." *Ochoa Ochoa*, 2025 WL 2938779, at *2.

## I. Jurisdiction

As discussed above, dozens of district courts have recently addressed the issue presented in this case based on similar sets of facts. This Court joins numerous other courts which have found—either explicitly or implicitly—that they have jurisdiction to rule on these issues.[2] Respondents argue that the Court lacks jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii), § 1252(b)(9), and § 1252(g). R. 16 at 14–19. The Court addresses each in turn.

### A. Section 1252(a)(2)(B)(ii)

Under § 1252(a)(2)(B)(ii), "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [their] discretion." Respondents argue that even if § 1226(a) were to apply, the Attorney General still has the power to make a "discretionary decision" following a bond hearing on whether to release Miguel on bond or continue to detain him. R. 16 at 19. But this petition is not about a "discretionary decision" to allow or deny bond. Rather, the issue is whether ICE is mandated to allow a bond hearing. For this reason, § 1252(a)(2)(B)(ii) does not strip the Court of jurisdiction. *See Ochoa Ochoa*, 2025 WL 2938779, at *4 (Section 1225(a)(2)(B)(ii) did "not bar [the] court from considering [the] habeas petition" as petitioner did "not challenge a discretionary bond denial").

---

[2] *See supra,* n. 1.

**B. Section 1252(b)(9)**

Under § 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." In *Jennings*, the Supreme Court explained as follows:

> [An] expansive interpretation of § 1252(b)(9) would lead to staggering results. Suppose, for example, that a detained alien wishes to assert a claim . . . based on allegedly inhumane conditions of confinement . . . [or] suppose that a detained alien brings a state-law claim for assault against a guard or fellow detainee . . . [or] suppose that an alien is injured when a truck hits the bus transporting aliens to a detention facility, and the alien sues the driver or owner of the truck. The "questions of law and fact" in all those cases could be said to "aris[e] from" actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention. But cramming judicial review of those questions into the review of final removal orders would be absurd.
>
> Interpreting "arising from" in this extreme way would also make claims of prolonged detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.

*Jennings,* 583 U.S. at 293. Ultimately, the Supreme Court concluded that § 1252(b)(9) "does not present a jurisdictional bar" where the parties are not "challenging any part of the process by which their removability will be determined." *Id.* at 294–95.

Here, Miguel challenges whether he has been detained under the correct statute and he asserts that he is entitled to a bond hearing in advance of removal proceedings. He does not challenge any part of the process by which his removability will be determined. As described in *Jennings*, if § 1252(b)(9) were to strip jurisdiction for a prolonged detention claim, it would make

4

the claim effectively unreviewable because by the time the final order was entered, the prolonged detention would have already occurred. Likewise, if § 1252(b)(9) were to strip jurisdiction from Miguel's claim for a bond hearing, it would make the claim effectively unreviewable because by the time the final order was entered, the opportunity for a bond hearing would have already passed. For these reasons, § 1252(b)(9) does not strip the Court of jurisdiction.

### C. Section 1252(g)

Under § 1252(g), "[e]xcept as provided in this section . . . , no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Court finds that the same reasoning discussed above with respect to § 1252(b)(9) applies to § 1252(g). *See Jennings*, 583 U.S. at 294 ("We [do] not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). Because Miguel's claim does not challenge any decision to commence proceedings, adjudicate cases, or execute removal orders, the Court finds that § 1252(g) does not strip the Court of jurisdiction.

## II.  Exhaustion

"Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.* The Immigration and Nationality Act "mandates exhaustion in order to challenge final orders of removal . . . [but not for] challenges to preliminary custody or bond determinations." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (citations omitted). Thus, exhaustion in this case is subject to the Court's discretion. As set forth in *Gonzalez:*

> Individual interests demand that exhaustion be excused when (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Id.* (cleaned up).

While only one factor is required, each factor supports excusing exhaustion here. Regarding the first factor, requiring exhaustion would cause prejudice because it would delay a bond hearing. The delay is significant because if an Immigration Judge ("IJ") issues a final removal order before a bond hearing, then Miguel would lose the opportunity for a remedy. Regarding the second and third factors, if Miguel were to petition an IJ and the Board of Immigration Appeals ("BIA") for a bond hearing, the IJ and the BIA would be bound to deny Miguel's request based on the BIA's recent decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025) (holding that an IJ "lack[s] authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). *Gonzalez*, 355 F.3d at 1018–19 (excusing exhaustion when "appealing to the BIA would have been futile because the BIA had predetermined the statutory issue (cleaned up)). Finally, regarding the fourth factor, Miguel argues that the denial of a bond hearing violates his constitutional due process rights, which raises a substantial constitutional question. For these reasons, the Court finds that Miguel is excused from exhausting his administrative remedies.

## III.    Detention under § 1225(b)(2)(A)  and § 1226(a)

Sections 1225(b)(2)(A) and 1226(a) are provisions of the Immigration and Nationality Act ("INA") that govern the removal of noncitizens. Section 1225 is a more specific provision that governs the "removal of inadmissible arriving aliens." 8 U.S.C. § 1225. Section 1225(b)(2)(A)

provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained [pending removal proceedings]." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Other than for certain exceptions not at issue in this case, "detention under section 1225(b)(2) is mandatory, and the noncitizen is not entitled to a bond hearing." *Chogllo Chafla*, 2025 WL 2688541, at *4. In other words, if Miguel is detained under § 1225(b), a bond hearing is not available.

In contrast, § 1226 is considered to be the "usual removal process." *Id.* at *5. It applies more broadly regarding the "apprehension and detention of aliens." 8 U.S.C. § 1226. It provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained [pending removal proceedings]" and that the Attorney General "(1) may continue to detain the [noncitizen]; and (2) may release the [noncitizen] on (A) bond . . . or (B) conditional parole." 8 U.S.C. § 1226(a). The Supreme Court has clarified that, other than for certain exceptions not at issue in this case, noncitizens detained under § 1226(a) are entitled to "receive bond hearings at the outset of detention." *See Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1) and § 1236.1(d)(1)) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."). In other words, if Miguel is detained under § 1226(a), he is entitled to receive a bond hearing.

As an initial note, there is no dispute that the provisions are mutually exclusive—a noncitizen cannot be subject to both mandatory detention under § 1225(b)(2)(A) and eligible for bond under § 1226(a). It therefore follows that if Miguel was detained pursuant to one provision, he cannot be simultaneously subject to the other. The critical question is which provision applies to Miguel.

"[W]hen the language of a statute is clear and unambiguous, no need exists for the court to examine the legislative history, and the court must give effect to the plain meaning of the statute." *United States v. Hayward*, 6 F.3d 1241, 1245 (7th Cir. 1993) (rev'd on other grounds). Turning to the language of § 1225(b)(2)(A), the Court finds that § 1225(b)(2)(A) does not apply to Miguel. For § 1225(b)(2)(A) to apply, "several conditions must be met . . . an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez*, 2025 WL 2084238, at *2 (citing 8 U.S.C. § 1225(b)(2)(A)). Critically, the phrase *seeking admission* "necessarily implies some sort of present-tense action." *Id.* at *6. *See United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000) (citations omitted) ("Congress' use of a verb tense is significant in construing statutes."); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1011 (9th Cir. 2020) (citations omitted) ("[T]he use of the present progressive, like use of the present participle, denotes an ongoing process."). Additionally, § 1225 applies to "arriving aliens", and under the INA, an "arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. At the time Miguel was detained, he was not "seeking admission" and he was not "coming or attempting to come into the United States." Far from it, he had already entered more than twenty-five years prior. As the district court stated in *Lopez Benitez*:

> This [present tense] understanding accords with the plain, ordinary meaning of the words "seeking" and "admission." For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not [] describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining.

2025 WL 2371588, at *7.

Turning to the language of § 1226, the Court finds that § 1226(a) applies to Miguel. Section 1226(c) "carves out a statutory category of aliens who may not be released [on bond]" even though they have been detained under § 1226(a). *Jennings*, 583 U.S. at 289. Specifically, § 1226(c)(1)(E) provides that where a noncitizen is "inadmissible under paragraph 6(A) . . . of section 1182(a) of this title" (meaning that the noncitizen is "present in the United States without being admitted or paroled", 8 U.S.C. § 1182(a)(6)(A)), the noncitizen may not be released on bond if the noncitizen has been "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E). In other words, § 1226(c)(1)(E) does not allow bond for noncitizen who is present in the United States without having been legally admitted if that noncitizen has committed certain crimes. It logically follows that a bond hearing is allowed in the opposite case, for a noncitizen like Miguel who is present in the United States without having been legally admitted but has *not* committed those crimes. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions" to the applicability of a statute or rule "proves" that the statute or rule "appl[ies] generally" and "across the board" absent those exceptions). *See also Rodriguez*, 779 F. Supp. 3d at 1256 ("This lends strong textual support to [the] position that "inadmissible" noncitizens like [petitioner] are included within Section 1226.").

Though the plain language of the statutes clearly places Miguel under § 1226(a), the Court notes the following additional points that further support the application of § 1226(a) rather than § 1225(b).

First, the above analysis is consistent with *Jennings*, where the Supreme Court stated that § 1225(b) applies to noncitizens "seeking admission into the country," and § 1226(a) applies to noncitizens "already in the country." 583 U.S. at 289 ("In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)."). "To be sure, the line between when a person is 'seeking admission' as opposed to being 'already in the country' is not necessarily obvious." *Lopez Benitez*, 2025 WL 2371588, at *4. For instance, a noncitizen who just crossed the border may technically be inside the country but is still treated as "an alien seeking initial entry." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 114, 139 (2020) (holding that a noncitizen detained immediately after crossing the border and "within 25 yards of the border" is treated as if stopped at the border). But 25 yards is a far cry from 25 years. Miguel is already in the country as described in § 1226(a). He is not seeking admission as described in § 1225(b).

Second, historical practice supports the application of § 1226(a). The "longstanding practice of the government—like any other interpretive aid—can inform [a court's] determination of what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (citations omitted). As stated above, "[h]istorically, noncitizens who resided in the United States, but who had previously entered without inspection, were not deemed 'arriving aliens' under § 1225(b), but were instead subject to § 1226(a)." *Maldonado*, 2025 WL 2374411, at *11; *see also Salcedo Aceros*, 2025 WL 2637503, at *3 ("Until this year, the [Government] applied § 1226(a) . . . to the vast majority of noncitizens allegedly in this country without valid documentation."). In other words, prior to ICE's new policies announced in 2025, Miguel would have been detained under § 1226(a).

10

Third, ICE's own actions support the application of § 1226(a). Section 1226(a) requires that a noncitizen be arrested on a warrant, while § 1225(b) does not. Here, Respondents contend that ICE obtained a warrant for Miguel prior to his arrest. R. 20 at 2. ICE's own actions—taking extra steps to obtain a warrant—are consistent with § 1226(a) rather than § 1225(b).[3]

Finally, the idea that a different detention scheme would apply to non-citizens "already in the country," as compared to those "seeking admission into the country," is consistent with the core logic of the immigration system. "When interpreting statutes, [courts] recognize that Congress legislates against the backdrop of certain unexpressed presumptions." *Hewitt v. United States*, 145 S. Ct. 2165, 2173 (2025) (citations omitted). Here, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely on the threshold of initial entry." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). Against this backdrop, the Court finds it doubtful that Congress intended §1225(b)(2)(A) to apply to noncitizens, like Miguel, who were detained while already in the United States.

For these reasons, the Court finds that Miguel is detained under § 1226(a). The Court notes that this finding is consistent with numerous other district courts to have addressed this issue in recent months.[4]

---

[3] As an addendum to the briefs, Miguel contends that he was detained following a warrantless arrest and that the warrant was issued only after his arrest. R. 20 at 2. In other words, if ICE detained Miguel pursuant to § 1226(a) but arrested him without a warrant, then the arrest may have violated the statute. Respondents submitted a copy of the warrant on the record, and the warrant is dated September 14, 2025. R. 15-2. Given the information currently on the record, the Court is unable to determine whether the warrant issued before or after the arrest. The briefs do not focus on this issue, however, so the Court limits its ruling to issues which have been fully briefed. If Miguel wishes to address this issue in more detail, he may do so via a separate petition.

[4] *See supra,* n. 1.

As discussed above, noncitizens detained under § 1226(a) are entitled to "receive bond hearings at the outset of detention." *See Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1) and § 1236.1(d)(1)) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."). As such, the Court could find based on § 1226(a) alone that Miguel is entitled to a bond hearing. That said, the Court also finds that Miguel is entitled to a bond hearing under due process of law.

## IV. Due Process

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (cleaned up). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* Specifically, "government detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections." *Id.* (emphasis in original). "It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of [the] geographic borders." *Id.* at 693. "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.*

"The general test for determining what process is due and when was set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017). "*Mathews* identified three factors to be balanced: first, the private interest at stake; second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and third, the government's countervailing interests." *Id.* Here, all three factors weigh in Miguel's favor.

First, regarding the private interest at stake, Miguel asserts "the most elemental of liberty interests—the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). For that reason, "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). Second, regarding the risk of erroneous deprivation, if ICE refuses to allow a bond hearing, then an Immigration Judge will be unable to determine whether the requirements are met for continued detention. Third, regarding, the government's countervailing interests, "the Government has a legitimate interest in the prompt execution of removal orders which detention may facilitate." *Chogllo Chafla*, 2025 WL 2688541, at *11. But simply holding a bond hearing does not impair that interest.

The Court thus finds that Miguel is entitled to a bond hearing. The Court notes this finding is consistent with numerous other district courts to have addressed this issue in recent months. *See, e.g.*, *Ochoa Ochoa*, 2025 WL 2938779, at *2; *Chogllo Chafla*, 2025 WL 2688541; *Sampiao*, 2025 WL 2607924; *Lopez-Campos*, 2025 WL 2496379; *Leal-Hernandez*, 2025 WL 2430025; *Maldonado*, 2025 WL 2374411; *Lopez Benitez*, 2025 WL 2371588.

## Conclusion

For the foregoing reasons, Miguel's petition [1] is granted. Respondents are ordered to provide Miguel with a bond hearing pursuant to 8 U.S.C. § 1226(a) within five days of this order.

**SO ORDERED.**                               **ENTERED: October 21, 2025**

**HON. JORGE L. ALONSO**
**United States District Judge**

13